```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

DUANE BARB,                         *

     Plaintiff,                     *

vs.                                 *
                                           CASE NO. 4:16-CV-16 (CDL)
INTERNATIONAL BROTHERHOOD OF        *
TEAMSTERS LOCAL UNION 528,
CALVIN SIDERS, and DEANGELOE        *
SMITH,
                                    *
     Defendants.
```

O R D E R

Duane Barb sues a union and two of its members for state-law claims based on interference with his employment, invasion of his privacy, and slander. The collective bargaining agreement between Barb's employer and the Defendant union is not essential to any issue in this action. Accordingly, Barb's claims are not completely preempted under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), and this Court does not have subject matter jurisdiction over this action. It is consequently remanded to the Superior Court of Muscogee County, Georgia.

BACKGROUND

Barb alleges the following facts in support of his claims. The Court must accept these allegations as true for purposes of the pending motion.

Barb began working as a transportation manager at SpartanNash's office in Midland, Georgia in March 2013. Barb supervised automobile drivers, some of whom were members of the International Brotherhood of Teamsters Local Union 528 ("Local Union 528"). Barb alleges that he disciplined several union-member drivers for violating SpartanNash policy. For example, Barb alleges that he terminated or disciplined union members for driving off the clock, having a bottle of liquor in a work truck, failing to report a driving accident, and receiving too many speeding tickets. Barb alleges that he disciplined non-union members in a similar manner around the same time. Barb does not allege that he is a member of Local Union 528.

After Barb punished several union-member drivers, these drivers and other union members retaliated against Barb by making false allegations about Barb to SpartanNash. The union members told SpartanNash that Barb was having an extramarital affair with a subordinate, was racist, and was punishing union members more harshly than non-union members. SpartanNash conducted an investigation and exonerated Barb of all charges.

SpartanNash launched a second investigation into Barb in January 2015 due to additional complaints made by union members. Members of Local Union 528 told SpartanNash that Barb was instructing drivers to work off the clock (a practice prohibited by federal law and SpartanNash policy) and engaging in an

extramarital affair with a subordinate (also a violation of SpartanNash policy). Barb alleges that the union members knew that these allegations were false and made them in an attempt to retaliate against Barb for disciplining union members.

SpartanNash sent two people to Midland, Georgia to investigate the allegations against Barb: Traci Donnelly, Labor Relations Manager for SpartanNash, and Brian Winterstien, SpartanNash Corporate Vice President. Barb alleges that Donnelly and Winterstein had no interest in conducting a legitimate investigation and were on a witch hunt for reasons to terminate Barb to appease union members. For example, Donnelly interviewed one of the most senior drivers in the Midland office about the accusations against Barb. The driver denied that Barb engaged in misconduct. But Donnelly allegedly refused to accept the driver's answer and interrogated him "according to an apparent agenda calculated to prove misconduct." Notice of Removal Attach. 2, Compl. ¶ 54, ECF No. 1-2.

When Donnelly and Winterstein interviewed Barb, he denied having a sexual relationship with a subordinate. But Donnelly refused to believe Barb and insisted that he was lying. Barb also denied instructing drivers to work off the clock and explained that he had actually disciplined drivers for such conduct. Donnelley refused to believe Barb and became "visibly frustrated and upset" that he would not admit guilt. *Id.* ¶ 87.

Next, Donnelly and Winterstein interviewed Barb's boss, Rick Wright. Winterstein advised Wright that his reputation would be tarnished if he kept Barb on board. Wright responded that Barb was one of the best transportation managers he had ever worked with.

Barb was discharged from SpartanNash on January 22, 2015. Barb was told that he was discharged because the company was seeking a change in leadership qualifications. But Barb alleges that the real reason he was terminated was to appease union members. Barb now sues Local Union 528 and individual union members for intentional interference with business relations, slander, and invasion of privacy. Barb originally filed this action in the Superior Court of Muscogee County, Georgia. Defendants removed the action to this Court based on federal question jurisdiction. Barb now moves to remand the action.

## DISCUSSION

"[S]tate court actions that could have been filed originally in federal court may be removed to federal court by a defendant." *Darden v. U.S. Steel Corp.*, 830 F.2d 1116, 1118 (11th Cir. 1987); 28 U.S.C. § 1441(a). Defendants contend that this action could have been filed originally in this Court based on federal question jurisdiction. To determine if a dispute contains a federal question, courts typically follow the well-pleaded complaint rule. *Id.* The well-pleaded complaint rule

4

requires courts to look exclusively at the four corners of a complaint to determine if a dispute sounds solely in state law or if it implicates a federal question. *See id.* at 1119 (explaining that usually "the plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclusively upon state law"). As a result, the general rule is that a case may not be removed to federal court due to a federal defense, including the defense of preemption.

But there is an exception to the well-pleaded complaint rule known as the complete preemption doctrine. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Defendants contend that removal is proper based on this exception. Complete preemption occurs when "the [Supreme] Court . . . conclude[s] that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). If a state-law claim is completely preempted by federal law, then the action may be removed to federal court. *Id.*

The Supreme Court has held that state-law claims for violations of labor contracts are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"). *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456-57 (1957). The LMRA "has

such extraordinary preemptive force as to be an appropriate federal statute under which to find complete preemption." *Palmer v. Local 8285 United Steel Workers of Am.*, 234 F. App'x 884, 887 (11th Cir. 2007) (per curiam). Section 301(a) states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "This preemption doctrine exists to 'ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes.'" *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1338 (11th Cir. 2004) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988)). "[B]ut it is important to note that 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . .'" *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement . . . ." *Caterpillar*, 482 U.S. at 396. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of

6

remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Courts use a two-part test to determine if a state-law claim is preempted by § 301 of the LMRA. The claim is preempted if it is: (1) "founded directly on rights created by a collective bargaining agreement," or (2) "substantially dependent upon an analysis of a collective bargaining agreement." *Darden*, 830 F.2d at 1119. To determine if a state-law claim falls within § 301, the Court looks to the elements of the claim. *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995). The Court concludes that none of Barb's claims are preempted by the LMRA. Thus, there is no federal question jurisdiction and this action must be remanded.

**I. Tortious Interference with Business Relations**

Barb brings a claim for tortious interference with business relations based on Defendants allegedly telling SpartanNash that Barb was instructing drivers to work off the clock and having an affair with a subordinate. Barb alleges that Defendants knew these accusations were false and made them in an attempt to have Barb terminated. Barb alleges that SpartanNash terminated him because of Defendants' false allegations. In Georgia, to state a claim for tortious interference with business relations "a plaintiff must show that the defendant, (1) acting improperly and without privilege (2) and acting purposely and with malice

7

with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff (4) for which the plaintiff suffered some financial injury." *Bartholomew*, 361 F.3d at 1340.

Defendants argue that this action is preempted by the LMRA by cherry picking allegations in the Complaint. Barb alleges that he was "the subject of several grievances filed by members of Local 528." Compl. ¶ 39. From this allegation, Defendants argue that a fact finder will have to analyze the grievance procedures set forth in the collective bargaining agreement to resolve Barb's claim. But Barb's claim is not based on the union's grievance procedures. Barb sues because union members communicated allegations that they knew were false in an attempt to have Barb terminated. Even though Barb alleges that he disciplined employees in a manner consistent with the collective bargaining agreement, these contentions are incidental to his claim. Barb does not allege that Defendants' accusations were related to whether he in fact complied with the collective bargaining agreement. Thus, whether Barb complied with the collective bargaining agreement when he disciplined employees is not essential to his claim that Defendants retaliated against him and interfered with his employment by making false allegations.

8

Defendants also suggest that some of their defenses to Barb's claim will require interpretation of a collective bargaining agreement. The Court is not persuaded that the collective bargaining agreement is in fact relevant to any of Defendants' suggested defenses. But even if the collective bargaining agreement is relevant to a defense, the Supreme Court has instructed that "the presence of a federal question, even a § 301 question, in a defensive argument does not . . . transform the action into one arising under federal law . . . ." *Caterpillar*, 482 U.S. at 398-99.

Defendants rely on the Eleventh Circuit's decision in *Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333, 1340 (11th Cir. 2004), to support their contention that § 301 preempts claims for tortious interference with business relations. The plaintiffs in *Bartholomew* were aggrieved employees suing a union for breaching the terms of a collective bargaining agreement. *Id.* at 1336-37. The Eleventh Circuit concluded that the plaintiffs' claims for tortious interference with business relations were preempted by § 301 because the plaintiffs alleged that they were terminated in a manner contrary to a collective bargaining agreement. *Id.* at 1340. By contrast, Barb does not allege that he is a union member. Nor does he allege that SpartanNash terminated him in a manner prohibited by a collective bargaining agreement. Although the Complaint does

9

reference a collective bargaining agreement, those allegations are inessential to Barb's claim. "[N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ." *Allis-Chalmers*, 471 U.S. at 211. In sum, Barb's claim for tortious interference with business relations is not preempted by § 301 of the LMRA.

**II. Slander**

Barb also alleges that Defendants slandered him when they told SpartanNash that he was having an affair with a subordinate and instructing drivers to work off the clock. It is unclear whether Barb asserts this claim against all Defendants, including Local Union 528, or only against the individual union members.[1] But for the purpose of resolving this motion, the Court assumes that Barb sues Local Union 528 for slander. "Under Georgia law, an oral defamation action lies when (1) a defendant makes charges against the plaintiff in reference to his trade, office, or profession, if such charges are calculated to injure him therein; (2) the charge is false; (3) the charge

---

[1] In Count Two of the Complaint, Barb brings a claim for slander against "Defendants Siders, Smith and John Does." Compl. ¶ 118. Barb does not mention Local Union 528. By contrast, in Count One and Count Three, Barb specifically states that the claim is brought against "Individual Defendants and Local 528." Compl. ¶¶ 107, 127. The parties in their briefing, however, appear to assume that Barb accuses Local Union 528 of slander. Thus, it is unclear to the Court whether Barb's slander claim is asserted against Local Union 528.

10

is made with malice; and (4) the communication is not privileged." *Bartholomew*, 361 F.3d at 1341.

Defendants contend that Barb's slander claim is preempted by § 301 of the LMRA because the Complaint invoked a collective bargaining agreement by alleging that off-the-clock driving is a "contractual breach." Compl. ¶ 99. First, it is unclear whether Barb is referring to a collective bargaining agreement or a contract between SpartanNash and the Department of Defense, one of SpartanNash's customers. *Id.* ¶ 25. Second, even assuming that Barb is referencing a collective bargaining agreement, there is no need to interpret the agreement since all the parties agree that working off the clock is a violation of the agreement. And most importantly, Barb's slander claim is not dependent on whether the collective bargaining agreement prohibits working off the clock because Barb alleges that off-the-clock work is prohibited by Department of Transportation regulations. A state-law claim escapes the preemptive force of § 301 if it can exist independently of a collective bargaining agreement. *See Allis-Chalmers*, 471 U.S. at 212.

Defendants also argue that the "publication" element of the slander claim will require the fact finder to interpret a collective bargaining agreement. Defendants rely on *Agee v. Huggins*, 888 F. Supp. 1573, 1580 (N.D. Ga. 1995), for the proposition that "publication" of a slander claim requires a

11

fact finder to interpret a labor contract. The facts in this dispute, however, are meaningfully distinct from *Agee*. In *Agee*, a union filed grievances against a supervisor on behalf of an aggrieved employee. *Id.* at 1578. A collective bargaining agreement prohibited the supervisor from retaliating against the employee for bringing the grievances. *Id.* at 1578-79. The employee alleged that the supervisor violated the collective bargaining agreement by slandering her in retaliation for the grievances. *Id.* Unlike the employee in *Agee*, Barb is not suing for violations of a collective bargaining agreement. This is a simple slander claim; it can be resolved like any other slander claim. The collective bargaining agreement is not essential to the claim. Accordingly, Barb's slander claim is not preempted by § 301 of the LMRA.

**III. Invasion of Privacy – False Light**

Barb also brings an invasion of privacy claim based on Defendants accusing Barb of having a sexual relationship with a subordinate and instructing subordinates to work off the clock. Barb alleges that he was held up to embarrassing and unnecessary scrutiny as a result of these false and malicious claims. "[T]o sustain a false light invasion of privacy claim, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable

person." *Smith v. Stewart*, 291 Ga. App. 86, 100, 660 S.E.2d 822, 834 (2008).

Defendants argue that Barb's invasion of privacy claim is preempted by § 301 for the same reason explained above regarding publication. The Court again finds this argument unpersuasive. Accordingly, Barb's invasion of privacy claim is not preempted by § 301.[2]

CONCLUSION

Barb's Complaint contains some factual allegations regarding a collective bargaining agreement. But a claim is not preempted by the LMRA simply because a collective bargaining agreement may be mentioned in, or even relevant to, the claim. A claim is preempted by § 301 of the LMRA only if the collective bargaining agreement is so essential to the claim that the claim is either *derived from rights created by* the agreement or *substantially dependent* on the agreement such that the collective bargaining agreement is inextricably intertwined with the claim. *Darden*, 830 F.2d at 1119. Barb's claims simply do not meet this exacting standard. Accordingly, there is no basis for federal question jurisdiction and Barb's motion to remand

---

[2] Defendants also contend that Barb's claim for punitive damages is preempted by § 301 of the LMRA. Barb seeks punitive damages based on the false accusations Defendants made to SpartanNash. Defendants argue that resolution of Barb's claim for punitive damages will require a fact finder to interpret the grievance procedures outlined in the collective bargaining agreement. As explained above, Barb's claims are not substantially dependent on the union's grievance procedures.

must be granted.  (ECF No. 7).  The Clerk is directed to remand this action to the Superior Court of Muscogee County, Georgia.

IT IS SO ORDERED, this 3rd day of May, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA